UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

AMY LAVANGO,

                        Plaintiff,

v.                                               Case # 16-CV-106-FPG

                                                     DECISION AND ORDER

NANCY A. BERRYHILL,[1] ACTING COMMISSIONER
OF SOCIAL SECURITY,

                       Defendant.

      Amy Lavango ("Lavango" or "Plaintiff") brings this action pursuant to the Social Security Act ("the Act") seeking review of the final decision of the Acting Commissioner of Social Security ("the Commissioner") that denied her applications for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Act. ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c)(3).

      Both parties have moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 9, 15. For the reasons that follow, Plaintiff's motion is GRANTED, the Commissioner's motion is DENIED, and this matter is REMANDED to the Commissioner for further administrative proceedings.

## BACKGROUND

      On January 27 and January 31, 2012, Lavango protectively applied for DIB and SSI with the Social Security Administration ("the SSA"). Tr.[2] 136-43. She alleged that she had been disabled since January 1, 2010 due to posttraumatic stress disorder, anxiety, and depression. Tr. 196. On May 31, 2013, Lavango appeared and testified at a hearing before Administrative Law

---

[1]     Nancy A. Berryhill is now the Acting Commissioner of Social Security and is therefore substituted for Carolyn W. Colvin as the defendant in this suit pursuant to Federal Rule of Civil Procedure 25(d).
[2]     References to "Tr." are to the administrative record in this matter.

1

Judge William M. Weir ("the ALJ"). Tr. 42-68. On September 26, 2014, the ALJ issued a decision finding that Lavango was not disabled within the meaning of the Act. Tr. 18-37. On December 11, 2015, the Appeals Council denied Lavango's request for review. Tr. 1-5. Thereafter, Lavango commenced this action seeking review of the Commissioner's final decision. ECF No. 1.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation marks omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation marks omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).

### II. Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial

gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). 20 C.F.R. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (20 C.F.R. § 404.1509), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See* 20 C.F.R. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I. The ALJ's Decision

The ALJ's decision analyzed Lavango's claim for benefits under the process described above. At step one, the ALJ found that Lavango had not engaged in substantial gainful activity since the alleged onset date. Tr. 21. At step two, the ALJ found that Lavango has the following severe impairments: bipolar, anxiety, and substance abuse disorders. Tr. 21-22. At step three, the ALJ found that these impairments met Listings sections 12.04, 12.06, and 12.09. Tr. 22-24. The ALJ then considered the materiality of Lavango's substance abuse and determined that if Lavango stopped using drugs she would still have severe impairments, but that those impairments, alone or in combination, would not meet or medically equal any impairment in the Listings. Tr. 24-25.

Next, the ALJ determined that if Lavango stopped using drugs she would retain the RFC to perform a full range of work at all exertional levels. Tr. 25-36. Specifically, the ALJ found that Lavango would be able to follow and understand simple directions and instructions; perform simple tasks independently; maintain normal workplace attention, concentration, and a regular work schedule; learn new tasks; and relate adequately with others so as not to disrupt workplace routines. Tr. 25-26.

At step four, the ALJ found that if Lavango stopped using drugs, this RFC would prevent her from performing her past relevant work as a waitress. Tr. 36. At step five, the ALJ relied on the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart A, App'x 2, and found that if Lavango stopped using drugs she could adjust to other work that exists in significant numbers in the national economy given her RFC, age, education, and work experience. Tr. 36-37. Specifically, the ALJ relied on Medical-Vocational Rule 204.00, which directed a finding of "not

disabled." Tr. 37. Accordingly, the ALJ concluded that Lavango was not "disabled" under the Act. *Id.*

**II.     Analysis**

Lavango argues that remand is required because the Appeals Council erred when it declined to review her case.[3] ECF No. 9-1, at 18-22; ECF No. 14; ECF No. 16, at 1-5. Specifically, Lavango asserts that the Appeals Council improperly rejected medical records from Gregory Castiglia, M.D. ("Dr. Castiglia") and treating physician Wendy L. Weinstein, M.D. ("Dr. Weinstein"). The Commissioner argues that the Appeals Council did not err and that none of the newly submitted evidence provides a basis for changing the ALJ's decision. ECF 15-1, at 13-19.

"[N]ew evidence submitted to the Appeals Council following the ALJ's decision becomes part of the administrative record for judicial review when the Appeals Council denies review of the ALJ's decision." *Lesterhuis v. Colvin*, 805 F.3d 83, 87 (2d Cir. 2015) (quoting *Perez v. Chater*, 77 F.3d 41, 45 (2d Cir. 1996)). The regulations require that the evidence be "new and material" and "relate to the period on or before the ALJ's decision." 20 C.F.R. §§ 404.970(b), 416.1470(b).[4] After such evidence is added to the record, the Appeals Council must consider the entire record, including the new evidence, and review a case if the ALJ's "action, findings, or conclusion is contrary to the weight of the evidence currently of record." *Lesterhuis*, 805 F.3d at 87 (citation omitted). "If the Appeals Council declines to review a case, the ALJ's decision, and not the Appeals Council's, is the final agency decision." *Id.* (citing *Perez*, 77 F.3d at 44). Here, the parties agree that the evidence submitted from Drs. Castiglia and Weinstein is

---

[3]     Lavango advances other arguments that she believes warrant reversal of the Commissioner's decision. ECF No. 9-1, at 22-29; ECF No. 16, at 5-8. However, because the Court disposes of this matter based on the Appeals Council's error, those arguments need not be reached.
[4]     These requirements were in effect when Lavango's case was decided on September 26, 2014. The text of 20 C.F.R. §§ 404.970(b) and 416.1470(b) was recently revised and went into effect on January 17, 2017.

new because it was not before the ALJ when he rendered his decision and some of it postdates the ALJ's decision.

### A. Evidence from Dr. Castiglia

Lavango submitted treatment notes to the Appeals Council from Dr. Castiglia dated January 19 and January 30, 2015. Tr. 508-20. When the Appeals Council denied Lavango's request for review, it stated that it "looked at" the medical records from Dr. Castiglia but that: "The [ALJ] decided your case through September 26, 2014. This new information is about a later time. Therefore, it does not affect the decision about whether you were disabled beginning on or before September 26, 2014." Tr. 2.

Dr. Castiglia's treatment notes indicate, most significantly, that Lavango underwent brain surgery in 1999 (Tr. 508, 514-15) and that a January 30, 2015 brain MRI was abnormal and indicated head injury (Tr. 512). This evidence is "material" because it could have influenced the Commissioner to decide the case differently. The ALJ found at step two of his decision that, despite Lavango's allegation that she suffered a traumatic brain injury due to physical abuse, Lavango had "no medically determinable traumatic brain injury or history of brain surgery." Tr. 21, 26. Specifically, the ALJ pointed out that the record lacked "objective evidence of this alleged traumatic brain injury and brain surgery except for [Lavango]'s own reported history and subjective complaints." Tr. 21. He noted that there were no hospital or treatment records showing traumatic brain injury treatment, no diagnostic images of Lavango's head, and no hospital records showing that she had brain surgery or post-operative treatment. *Id.* Similarly, the ALJ noted in his RFC analysis that Lavango "testified that she had a traumatic brain injury, but sufficiently masked the effects of this with drugs and alcohol. There is nothing in the medical record to support this assertion." Tr. 31.

A more difficult question is whether Dr. Castiglia's treatment notes relate to the period on or before the ALJ's decision. The Second Circuit has held that "medical evidence generated after an ALJ's decision cannot be deemed irrelevant solely because of timing." *Carrera v. Colvin*, No. 1:13-cv-1414 (GLS/ESH), 2015 WL 1126014, at *8 (N.D.N.Y. Mar. 12, 2015) (citing *Newbury v. Astrue*, 321 F. App'x 16, 18 n.2 (2d Cir. 2009) (summary order)). This is because "[e]xaminations and testing conducted after the ALJ's decision is rendered may still be relevant if they clarify a pre-hearing disability and/or diagnoses." *Id.* (citation omitted). Thus, the Appeals Council's categorical refusal to consider new and material evidence solely because it was created after the ALJ's decision can constitute reversible error. *Id.* (citing *Pollard v. Halter*, 377 F.3d 183, 193 (2d Cir. 2004) ("Although the new evidence consists of documents generated after the ALJ rendered his decision, this does not necessarily mean that it had no bearing on the Commissioner's evaluation of [the claimant's] claims. To the contrary, the evidence directly supports many of her earlier contentions regarding [the] condition. It strongly suggests that, during the relevant time period, [her] condition was far more serious than previously thought[.]") and *Sergenton v. Barnhart*, 470 F. Supp. 2d 194, 204 (E.D.N.Y. 2007) (remanding to consider post-hearing diagnostic evidence suggesting that the claimant's impairment was substantially more severe than previously diagnosed)).

Here, Dr. Castiglia's treatment notes seem to relate to the period at issue because they were generated just four months after the ALJ's decision and there is nothing in the record that indicates that something happened between the ALJ's decision and the brain MRI that would account for its abnormal results. Instead, Dr. Castiglia's treatment notes repeatedly indicate that Lavango had brain surgery in 1999. Nonetheless, a reviewing court cannot assess whether the new evidence relates to the period on or before the ALJ's decision. *Carrera*, 2015 WL 1126014,

at *10. The Appeals Council's cursory, formulaic rejection of the evidence simply because it was generated after the ALJ's decision, without any legal or factual reasoning, is insufficient. *See* 20 C.F.R. §§ 404.970(c), 416.1470(c) ("If [the claimant] submit[s] additional evidence that does not relate to the period on or before the date of the [ALJ's] hearing . . . the Appeals Council will send [the claimant] a notice that *explains why* it did not accept the additional evidence[.]") (emphasis added). Accordingly, this matter must be remanded to the Commissioner for reconsideration in light of the new evidence from Dr. Castiglia. *See Bluman v. Colvin,* No. 15-CV-627-FPG, 2016 WL 5871346, at *4 (W.D.N.Y. Oct. 7, 2016) (remanding for reconsideration in light of new evidence that the Appeals Council summarily rejected because it was created after the ALJ's decision).

### B. Evidence from Dr. Weinstein

Lavango also submitted evidence to the Appeals Council from treating physician Dr. Weinstein. Tr. 494-503. This evidence contained treatment notes that predate the ALJ's decision and a brain MRI and medical source statement that postdate the ALJ's decision. *Id.* Although the Appeals Council's decision to deny review indicated that it "looked at" Dr. Castiglia's treatment notes, it did not mention Dr. Weinstein's records at all even though it included that evidence in the administrative record. Tr. 2. Lavango argues that the ALJ's decision is not supported by substantial evidence in light of Dr. Weinstein's treatment notes and opinion, and the Court agrees.

A reviewing court must consider the substantiality of the ALJ's decision in light of the evidence that the ALJ considered plus the additional evidence the Appeals Council accepted. *See Perez v. Chater*, 77 F.3d 41, 45-46 (2d Cir. 1996) ("When the Appeals Council denies review after considering new evidence, [the Court] simply review[s] the entire administrative

record, which includes the new evidence, and determine, as in every case, whether there is substantial evidence to support the decision of the Secretary."). If the additional evidence is consistent with the ALJ's findings, then the decision should be affirmed. *See id.* at 47. If the additional evidence undermines the ALJ's decision, such that it is no longer supported by substantial evidence, then the case should be reversed and remanded. *See Brown v. Apfel*, 174 F.3d 59, 65 (2d Cir. 1999) (stating that conflicting evidence may indicate that the claimant's limitations were not sufficiently documented or worsened over time).

Dr. Weinstein's treatment notes that predate the ALJ's decision repeatedly state that Lavango had brain surgery in 1999 and that she exhibited symptoms of a traumatic brain injury. Tr. 494, 496, 498, 500. Furthermore, a brain MRI taken on November 3, 2014, roughly five weeks after the ALJ rendered his decision, was abnormal and indicated head injury. Tr. 505-06. As explained above, the ALJ discounted Lavango's allegations of brain surgery and traumatic brain injury due to the lack of supporting evidence in the record. Tr. 21, 26, 31. Thus, this evidence is "material" because it could have influenced the Commissioner to decide the case differently. Moreover, the treatment notes that predate the ALJ's decision clearly relate to the period at issue. It is also likely that the November 2014 MRI relates to the period at issue, because there is no evidence in the record that anything happened between the ALJ's decision and the MRI that would account for its abnormal results. However, this is for the Commissioner to determine on remand, because a reviewing court cannot assess whether the new evidence relates to the period on or before the ALJ's decision. *Carrera*, 2015 WL 1126014, at *10.

On May 16, 2015, Dr. Weinstein provided a medical source statement. Tr. 503. In that statement, Dr. Weinstein opined that Lavango was moderately limited in understanding, remembering, and carrying out instructions; maintaining attention and concentration; making

simple decisions; interacting appropriately with others; maintaining socially appropriate behavior without exhibiting behavior extremes; maintaining basic standards of personal hygiene and grooming; and appearing able to function in a work setting at a consistent pace. *Id.* Dr. Weinstein also opined that Lavango was "unable to work," that her restrictions were permanent, and that her impairments have lasted or are expected to last at least 12 months. *Id.* Significantly, Dr. Weinstein did not recommend referral to substance abuse rehabilitation or indicate that Lavango's impairments were related to substance abuse, despite evidence that Dr. Weinstein knew that Lavango abused drugs in the past. Tr. 497 (indicating that Dr. Weinstein reviewed records stating that Lavango abused cocaine and alcohol), 498 (indicating that Dr. Weinstein confronted Lavango about her past substance abuse and warned her that she would not be treated if she was using drugs).

Dr. Weinstein's opinion conflicts with the ALJ's overall conclusion that Lavango would not be disabled if she stopped using drugs, because Dr. Weinstein clearly opined that Lavango was disabled due to mental impairments and not due to substance abuse. Tr. 502-03. Similarly, Dr. Weinstein's assessed mental limitations conflict with the ALJ's RFC assessment that Lavango can follow and understand simple directions and instructions; perform simple tasks independently; maintain normal workplace attention, concentration, and a regular work schedule; learn new tasks; and relate adequately with others so as not to disrupt workplace routines. Tr. 25-26. Thus, Dr. Weinstein's opinion is "material" because it could have influenced the Commissioner to decide the case differently.

It is also likely that Dr. Weinstein's opinion relates to the period at issue because, although it was rendered about eight months after the ALJ's decision, there is evidence that Dr. Weinstein treated Lavango several times during the relevant period. Tr. 494-96, 498-500.

Moreover, Dr. Weinstein indicated that Lavango's impairments *have lasted*, or can be expected to last, at least 12 months. Tr. 503 (emphasis added). Depending on how the ALJ interprets all of the evidence on remand, he may conclude that Dr. Weinstein's opinion, although it postdates the relevant period, indicates that Lavango was impaired during the relevant period.

It is also important to note that Dr. Weinstein is a treating physician and therefore the SSA's regulations direct the ALJ to give her opinion "controlling weight" as long as it is "well-supported by medically acceptable . . . techniques and is not inconsistent with the other substantial evidence in [the record]." *See Lesterhuis*, 805 F.3d at 88 (citing 20 C.F.R. § 404.1527(c)(2)); 20 C.F.R. § 416.927(c)(2). On remand, the ALJ might conclude that Dr. Weinstein's opinion is not entitled to any weight, much less controlling weight, but the agency should make that determination in the first instance and the Court should refrain from "affirm[ing] an administrative action on grounds different from those considered by the agency." *Id.* (quoting *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)). Although the Commissioner correctly argues that Dr. Weinstein's opinion as to the ultimate issue of disability is "reserved to the Commissioner," that does not mean that the ALJ is entitled to ignore this opinion on remand. Instead, if the ALJ decides to reject Dr. Weinstein's findings, he must *explain why*. *See Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999) ("Reserving the ultimate issue of disability to the Commissioner relieves the [SSA] of having to credit a doctor's finding of disability, but it does not exempt [ALJs] from their obligation . . . *to explain why* a treating physician's opinions are not being credited.") (emphasis added).

For the reasons stated, Lavango's claim should be reevaluated considering all the evidence relevant to determining her disability. Accordingly, in light of the medical record

before the ALJ and the records the Appeal Council accepted, the Court finds that the ALJ's decision was not supported by substantial evidence and that remand is required.

## CONCLUSION

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 9) is GRANTED, the Commissioner's Motion for Judgment on the Pleadings (ECF No. 15) is DENIED, and this matter is REMANDED to the Commissioner for further administrative proceedings consistent with this opinion, pursuant to sentence four of 42 U.S.C. § 405(g). *See Curry v. Apfel,* 209 F.3d 117, 124 (2d Cir. 2000); 42 U.S.C. § 1383(c)(3). The Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: May 17, 2017
　　　　Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court